UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAN CHATMAN,

    Petitioner,

v.                                                            Case No. 2:07-cv-67
                                                                 HON. ROBERT HOLMES BELL

LINDA M. METRISH,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

        Petitioner Dwan Chatman filed this petition for writ of habeas corpus challenging the validity of his convictions for first degree murder and felony firearm. Petitioner was convicted by a jury and was sentenced to life imprisonment. The Michigan Court of Appeals summarized the facts of this case as follows:

> A businessman observed a murder from the second floor of a building at approximately 11:00 p.m. in late May 1997. The businessman heard gunshots followed by a woman's scream. He then observed a man pour a substance on a body and then ignite the body. Although the businessman believed that he could identify the murderer, he did not select defendant, the victim's former boyfriend, during a line up. The victim's car was found a short distance from her body. The driver's side door was open, and her purse, containing money, and cellular telephone were found in the car. Defendant gave a statement to police that denied any physical contact with the victim during the relevant time period. Rather, defendant asserted that the two communicated by telephone that evening, but did not see each other. Charges were filed in 2001, after an acquaintance of defendant's, Craig Burns, came forward, alleging that defendant had confessed to committing the crime. Burns, a welder and self-proclaimed assistant pastor, had been convicted of crimes in the past and had been accused of a crime by defendant's current girlfriend. Thus, the credibility of Burns' testimony was extensively attacked at trial. Also, family and

friends of the victim testified regarding the couple's tumultuous relationship, break up, and threats of violence in proximity to the time of the murder. Defendant presented the testimony of his girlfriend and his girlfriend's mother to establish an alibi to the murder. Defendant was convicted as charged.

Petitioner maintains that his convictions were obtained in violation of his federal rights. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues:

I. Violation of the right to remain silent.

II. Violation of the right to privacy; the free exercise of confidential communication with a clergyman and the ineffective assistance of counsel for failure to object.

III. Improper admission of irrelevant, unfairly prejudicial evidence testimony and the deliberate violation of the trial court's order suppressing some of the evidence.

IV. Petitioner was entitled to a new trial based upon newly discovered evidence of perjured testimony.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that it was error when a police officer improperly commented on Petitioner's right to remain silent. The Michigan Court of Appeals rejected this claim, explaining:

> Defendant first alleges that his due process rights were violated when the prosecutor elicited testimony regarding defendant's request to speak to an attorney. We disagree. This information was revealed in a brief, nonresponsive answer by a police officer to the prosecutor's question and when the trial court instructed the officer to read the statement aloud. Defense counsel did not object or move to strike the answers or request a curative instruction. A party may not waive objection in the trial court and challenge the action as error on appeal because to do so would allow a party to harbor error as an appellate parachute. *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998). Furthermore, police officers may testify regarding admissions made prior to a defendant's exercise of his *Miranda* rights to establish the end and beginning of an interrogation and to give a complete overview of the officer's testimony provided there is no undue emphasis on the subsequent exercise of *Miranda* rights. *People v McReavy*, 436 Mich 197, 215-216; 462 NW2d 1 (1990), citing *Rowan v Owens*, 752 F2d 1186 (CA 7, 1984). Review of the record reveals that the brief mention of defendant's request to speak to an attorney was not unduly emphasized and merely established the

context of the conversation. Furthermore, defense counsel highlighted the fact that defendant voluntarily went to the police station, gave a statement denying involvement, and participated in a line up. Therefore, reversal is not warranted.

Detroit Police Sergeant Samuel Quick testified that he interviewed Petitioner during his investigation of the death of Kabbira Crawford. Sergeant Quick read Petitioner his rights and then engaged in a "conversation" with Petitioner:

> Q   Did you record what Mr. Chatman said to you?
>
> A   Originally, me and Mr. Chatman was just having an oral conversation. And once the conversation got toward the end he decided that he did not want to answer any more --
>
> THE COURT:   That's not the question that was asked. He asked you did you record, isn't that question you asked him?
>
> MR. HALL:   Yes, your Honor.
>
> THE COURT:   Answer the question that was asked of you, please.
>
> THE WITNESS: Yes, sir.
>
> (BY MR. HALL, CONTINUING):
>
> Q   You recorded what he said to you?
>
> A   Yes.
>
> Q   What did he say to you? Do you have any independent recollection what he said to you?
>
> A   Yes.
>
> Q   What was that?
>
> A   He was giving me the times, and things of that nature. When he left work, and the last time he had talked to complainant, Ms. Crawford.

Q   I'm showing you what [has] been marked as People's Proposed Exhibit No. 16, what is that?

A   A copy of the notes that I wrote from the conversation that I had [with] Mr. Chatman.

Q   So you took notes as to the conversation?

A   Yes.

Q   Why did you take notes?

A   Because we never officially had a witness statement, we were just having oral conversation. And once he decided that he want[ed] to have an attorney I just wrote down the information.

Q   So you wrote this down?

A   Yes.

Q   After he had told?

A   Yes.

Q   What did he tell you?

A   May I read it? I don't know exactly verbatim what was said at that time or whatever.

Q   So you have no independent recollection of what you wrote down?

A   I mean I have recollection of it, but --

Q   You don't know exactly what you wrote?

A   Right. Not exactly.

Q   Would reading it refresh your recollection?

A   Yes.
                    (Pause)

   THE COURT: You can't memorize that, why don't you just read it?

MR. MITCHELL: Can I voir dire the witness, please, Judge?

THE COURT: No. Read it out loud.

MR. HALL: And that was my next question.

(BY MR. HALL, CONTINUING):

Q        Could you read the statement, please?

A        Yes. I talked to Dwan Chatman. He states that he paged Kabbira at 10:30 p.m. from his cell phone after he got off of work around 10:00 p.m. He was in his car driving down St. Syrup Street [when] she called him back, he asked her where she was at. She wouldn't tell him, so they got off the phone. He stated that she paged him about 11:15 p.m. He called back but she didn't answer. He called her cell phone. He then stated he went to his girlfriend's house at 718 Kitchener, he arrived at 11:30 p.m. He wanted a lawyer after that, so we stopped talking.

Q        And that was the extent of your conversation with Mr. Chatman?

A        Yes.

In *Doyle v. Ohio*, 426 U.S. 610 (1975), the Supreme Court held that a prosecutor may not use a defendant's silence at the time of arrest or after *Miranda* warnings have been given for impeachment during trial. *See also Greer v. Miller*, 483 U.S. 756 (1987). In my opinion, there was no violation of Petitioner's right to remain silent. Even if an error occurred, the statements made could not have had a substantial and injurious effect on the jury verdict. In order to justify habeas relief based on the state trial court's error, Petitioner must show that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 1722 (1993); *O'Neal v. McAninch*, 513 U.S. 432 (1995); *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946). The Supreme Court stated "if one cannot say with fair assurance, . . . that the judgment was not substantially swayed

by the error, it is impossible to conclude that substantial rights were not affected," *Kotteakos*, 328 U.S. at 750, 66 S. Ct. at 1248, and if a judge is in "grave doubt" as to whether a constitutional error had a substantial effect on a jury, that error is not harmless and the petitioner must win. *O'Neal*, 115 S. Ct. at 995. Under *Brecht*, Petitioner must show that the trial error resulted in actual prejudice. In the opinion of the undersigned, petitioner has not made that showing. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that his counsel erred by failing to object to testimony given by Craig Burns regarding a conversation that Burns had with Petitioner. Petitioner claims the testimony was in violation of the clergy-penitent privilege. Burns testified that Petitioner had told him in a joking manner that Petitioner killed his girlfriend and that if Burns told anyone that Petitioner would kill Burns and his loved ones. The Michigan Court of Appeals explained why this claim lacks merit.

> Defendant contends that trial counsel was ineffective for failing to challenge Burns' testimony based on clergy-penitent privilege. We disagree. In order for a defendant to establish a claim that he was denied his constitutional right to the effective assistance of counsel, he must show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial that he was denied a fair trial. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To prove deficient performance, a defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). To prove prejudice, a defendant must affirmatively demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 302-303. Defense counsel's performance must be evaluated against an

objective standard of reasonableness without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). When a defendant fails to move for a hearing or a new trial based on ineffective assistance of counsel, *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), any review is limited to mistakes apparent on the record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

Defendant failed to meet his heavy burden of demonstrating ineffective assistance of counsel. Burns testified that he was a welder and assistant pastor. However, he did not reveal his underlying training and the extent of time that he devoted to each discipline. Burns was not the pastor of the church at which defendant appeared, rather, Burns' father was the pastor. Additionally, Burns testified that the admission by defendant was accompanied by a threat against Burns and members of his family. There was no evidence that the rules of the denomination, see MCL 600.2156, would have required Burns to maintain his silence where a threat was levied against his family. Accordingly, the failure to raise this issue in the trial court is not a mistake apparent on the record and could be construed as trial strategy. *Rodgers, supra*. Furthermore, trial counsel's conduct did not deny defendant a fair trial where he was able to elicit testimony regarding Burns' prior convictions, his current criminal charges involving defendant's girlfriend, and the submission of the information to police years after the confession was given, but prior to the commencement of Burns' criminal trial. *Pickens, supra*.

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). In the opinion of the undersigned, for the reasons stated by the Michigan Court of Appeals, Petitioner cannot show that his counsel was ineffective on this issue.

Petitioner claims that prior bad acts evidence should not have been admitted. The Michigan Court of Appeals found no error under state law. "[S]uch an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and, therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. In the opinion of the undersigned, Petitioner has not established any constitutional error.

Petitioner claims that he is entitled to a new trial based upon newly discovered evidence. Petitioner has obtained the affidavits from prison acquaintance Lamont McLure and Nathan Burns, Craig Burns' brother, who both indicate that they have personal knowledge that Craig Burns intended to lie at Petitioner's trial. Petitioner asserts that this proves that the government used perjured testimony to gain Petitioner's conviction. Both individuals indicate in

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and, therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. In the opinion of the undersigned, Petitioner has not established any constitutional error.

Petitioner claims that he is entitled to a new trial based upon newly discovered evidence. Petitioner has obtained the affidavits from prison acquaintance Lamont McLure and Nathan Burns, Craig Burns' brother, who both indicate that they have personal knowledge that Craig Burns intended to lie at Petitioner's trial. Petitioner asserts that this proves that the government used perjured testimony to gain Petitioner's conviction. Both individuals indicate in

one general statement that Craig Burns lied during his testimony, without any other supporting statements. It is well settled that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose any evidence it has in its possession or of which it is aware which is both favorable to the accused and material to guilt or punishment. A defendant does not have to make a specific request for *Brady* evidence before the government has an obligation to disclose favorable evidence. *See United States v. Agurs*, 427 U.S. 97 (1976). As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 1565, citing *Agars* at 108. There exists no evidence that the prosecution withheld evidence from Petitioner or knowingly allowed Craig Burns to testify falsely. The affidavits lack credibility and do not adequately support a claim that Craig Burns perjured himself at trial. Furthermore, the testimony of Craig Burns was challenged at trial by defense counsel. Petitioner's claim that he has newly discovered evidence is not supported by the record.

Petitioner raised two additional issues in his responsive brief that were not presented in his petition. Petitioner claims that there existed insufficient evidence to convict him of the crimes. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that Petitioner committed the crime. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or

resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Sufficient evidence was presented at trial to support Petitioner's convictions.

Petitioner claims that he received ineffective assistance of counsel because counsel failed to properly investigate and failed to exercise peremptory challenges. Petitioner has failed to show that counsel was ineffective in accordance with the standards set forth by *Strickland v. Washington*, 466 U.S. 668.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists

could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

     /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: October 29, 2009